# MONTGOMERY WARD & CO., INCORPORATED v. HERMAN CHARLES BELL

[No. 1264, September Term, 1979.]

*Decided June 16, 1980.*

The cause was argued before MOYLAN, LOWE and WILNER, JJ.

*Alfred M. Porth,* with whom were *Theodore B. Cornblatt, S. Woods Bennett* and *Smith, Somerville & Case* on the brief, for appellant.

*Thomas V. Friedman,* with whom were *Joyce Seunarine* and *Rosen, Esterson & Friedman* on the brief, for appellee.

WILNER, J., delivered the opinion of the Court.

On April 23, 1975, appellee suffered an accidental injury during the course of his employment with appellant. He filed a claim with the Workmen's Compensation Commission which, on September 23, 1977, conducted an evidentiary hearing to consider the nature and extent of appellee's disability. Following the hearing, the Commission referred appellee to its medical examiner (who, in turn, referred him to a neurosurgeon) for an evaluation of appellee's permanent disability. On February 16, 1978, the Commission awarded appellee permanent disability benefits for a 60% industrial loss of use of his body as the result of his accidental injury.

Appellant — the employer — appealed this decision to the Circuit Court for Baltimore County, submitting the case for decision by the court (without a jury) on the record made before the Commission. No new or additional evidence was offered in the judicial proceeding. After reviewing the administrative record, the court, on August 1, 1979, affirmed the Commission's award. In its Memorandum Opinion, the court said:

> "In reviewing this ruling, the court is 'guided by the general statutory command that the decision(s) of the Commission (are) entitled to prima facie correctness . . . a Court, therefore, may reverse a Commission ruling only upon a finding that its action was based upon an erroneous construction of the law or facts' [sic]. *Frank v. Baltimore County,* 284 Md. 655, 658, [399] A.2d [250] (1979), Md. Ann. Code of 1957, Art. 101, Sec. 56 (A).

> "After reading the transcript and considering the film viewed in open Court, the Court does not find

that the Commission was erroneous in its interpretation and finding of fact or in the application of the law to the facts, and, therefore, the Court finds that the Commission had before it evidence legally sufficient to support its decision."

Dissatisfied, appellant moved for a new trial. Quoting now from a stipulation entered into by the parties pursuant to Maryland Rule 1026 (e):

"In its memorandum in support of this [new trial] motion, the employer and self-insurer argued that Judge Hormes had applied the incorrect standard of review in considering the appeal from the Commission's decision. It was argued that the court's reliance on *Frank v. Baltimore County,* 284 Md. 655, 399 A.2d 250 (1979), was misplaced because the Court of Appeals had misapplied Article 101, Section 56 of the Annotated Code of Maryland in reaching its decision in *Frank.* The employer and self-insurer contended that *Frank,* which involved a workmen's compensation claim for an accidental injury, had incorrectly been grounded on the Court of Appeals' prior decision in *Maryland Bureau of Mines v. Power,* 258 Md. 379, 265 A.2d 860 (1970), which had involved a workmen's compensation claim for an occupational disease. It was the contention of the employer and self-insurer that Article 101, Section 56 provides for a broader standard of appellate review in accidental injury cases than is allowed in occupational disease cases and that Section 56 permits the appellate court to reassess and evaluate the facts of a claim for accidental injury and render its own opinion based on the facts rather than being bound by the Commission's findings of fact as the appellate court is in an occupational disease claim.

"The lower court denied this motion for a new trial on October 4, 1979. The court stated that it had not misapplied the law 'and that the facts were

sufficient to uphold the ruling of the Workmen's Compensation Commission.' "

Appellant presses its claim in this Court that the trial court applied an incorrect standard of review in affirming the Commission's award. This is based upon the proposition, inferred from the wording of the Memorandum Opinion, that the court viewed its role as being limited to a determination of whether the evidence before the Commission was sufficient to support its conclusion and not as encompassing the broader scope of review set forth in Md. Ann. Code art. 101, § 56 (a).

We agree with appellant as to what the proper scope of review is in an accidental injury case. As to whether the trial court applied that test, the record, unfortunately, is not as clear as it could be; however, for the reasons we shall hereafter explain, we cannot say that the court applied an incorrect standard of review.

The standard, and scope, of judicial review of Workmen's Compensation Commission decisions is set forth primarily in sections 56 (a) and (c) of art. 101. Section 56 (c) provides, in relevant part, that "[i]n all court proceedings under or pursuant to this article, the decision of the Commission shall be prima facie correct and the burden of proof shall be upon the party attacking the same." There is little dispute about the meaning or applicability of that provision.

Section 56 (a) is quite lengthy and encompasses a number of matters pertaining to appeals from the Commission. The relevant parts, in terms of this proceeding, are as follows:

"Any employer ... feeling aggrieved by any decision of the Commission affecting his interests under this article, may have the same reviewed by a proceeding in the nature of an appeal ... and the court shall determine whether the Commission has justly considered all the facts concerning the injury, whether it has exceeded the powers granted it by the article, and whether it has misconstrued the law and facts applicable in the case decided. ... If the court shall determine that the Commission has

acted within its powers and has correctly construed the law and facts, the decision of the Commission shall be confirmed. . . . Upon the hearing of such an appeal the court shall, upon motion of either party . . . submit to a jury any question of fact involved in such case provided, however, that in all appeals in which occupational diseases are involved, the findings of fact by the Commission shall be final and not subject to review or modification by the court or be submitted to a jury."

As the Court of Appeals noted in *Md. Bureau of Mines v. Powers,* 258 Md. 379 (1970), § 56 (a), coupled with a provision in § 29 of art. 101, distinguishes between appeals involving occupational diseases and all other appeals (*i.e.,* those involving accidental injuries) in terms of the scope of judicial review. In appeals involving accidental injuries, the reviewing court has very broad authority, notwithstanding the *prima facie* correctness of the administrative decision. This review, said the Court at p. 382, "extends both to findings of fact and applicable law" and "provides for a trial which is essentially de novo." *See also Dent v. Cahill,* 18 Md. App. 117 (1973).

Where the appeal concerns an occupational disease, however, the General Assembly intended that Commission determinations be cloaked with a more pervasive degree of finality, necessarily restricting the revisionary authority of the court. At p. 383 (omitting citations):

"We have recognized that a finding of the Commission may be reversed when it is based on an erroneous conception of the applicable law. . . . Utilizing this principle our decisions have extended the power of review to the factual field because we have held '[n]otwithstanding the finality which these statutes seek to confer upon such findings of the Commission, they are subject to review if not supported by substantial or legally sufficient evidence (both terms being found in the cases), and the existence of such evidence is a question of law.' "

Looking at § 56 (a) in light of *Powers,* the standards to be applied in reviewing Commission decisions are these:

(1) Where the case involves an accidental injury, the court must determine three things: (i) did the Commission justly consider all the facts concerning the injury; (ii) did the Commission exceed its statutory authority; and (iii) did the Commission misconstrue the facts or the law applicable to the case?

(2) Where the case involves an occupational disease, the court looks only to whether the Commission misconstrued the applicable law. Included *within that inquiry,* however, is whether there was substantial (or legally sufficient) evidence to support the Commission's factual conclusions, that being, in essence, an issue of law rather than of fact. *See Burdock v. Kaiser Aluminum,* 22 Md. App. 631, *cert. den.* 272 Md. 738 (1974), and *compare ABC Day Care Center v. Browne,* 17 Md. App. 470 (1973).

The apparent source of confusion in this case is a brief passage in *Frank v. Baltimore County,* 284 Md. 655 (1979). That case happened to involve an accidental injury, but the only issue before the Court was a purely legal one — whether the "offset" provision of §§ 33 (c) and (d) of art. 101 applied to a pension benefit received by the injured employee from a contributory pension plan. There was no argument, in the Court of Appeals, over the nature and extent of the injury or its basic compensability under the Act. In that context, the Court observed, at p. 658:

> "In reviewing ... [the Commission's ruling on this issue] we, as was the circuit court, are to be guided by the general statutory command that 'the decision[s] of the Commission [are] entitled to prima facie correctness.' *Md. Bureau of Mines v. Powers,* 258 Md. 379, 382, 265 A.2d 860, 862 (1970) (applying Md. Code (1957, 1964 Repl. Vol.), Art. 101, § 56 (c)). *A court, therefore, may reverse a commission ruling only upon a finding that its action was based upon an erroneous construction of the law or facts, id.* at 383 [862]; Md. Code (1957, 1979 Repl. Vol.), Art. 101, § 56(c), the former being

the sole issue presented for judicial determination in this case." (Emphasis supplied.)

The second (italicized) sentence of this passage, we deign to suggest, does appear to be a bit misleading. It purports to apply a test discussed in *Powers* in connection with an occupational disease case to an accidental injury situation, but then does not state that test in quite the same way as it was expressed in *Powers.* The Court in *Powers* sanctioned reversal in an occupational disease case only upon a finding of an "erroneous conception of the applicable law," by the Commission and not upon a finding of an "erroneous construction of facts." As noted earlier, the only ground of reversal on the *facts,* in such a case, is where there is a legal insufficiency of evidence to support the Commission's factual conclusions. This has to do with the *quantum* of evidence before the Commission, however, not with the Commission's "construction" of that evidence. Conversely, it would seem clear from *Powers* (and a long line of cases preceding it) that, in an accidental injury case, the scope of judicial review is broader than merely determining "an erroneous construction of the law or facts," unless included within that phrase, implicitly, is the issue of whether the Commission "justly consider[ed] all the facts concerning the injury."

Given the issue actually before the Court in *Frank,* we do not believe that the Court intended by this language to mark any change in the principles so clearly enunciated by the same author in *Powers.* We think, rather, that it was merely intended to refer the reader back to *Powers,* and to continue unchanged and undiminished the dual criteria as expressed therein. In other words, we construe the language in *Frank* as expressing, in a somewhat truncated fashion, the same concepts and standards set forth in *Powers.* This, then, *would* include, in an accidental injury case, whether the Commission justly considered all the facts concerning the injury.

We think further that the trial court considered *Frank,* which it cited and quoted in its Memorandum Opinion, in the same way. It said that, after review of all the evidence before the Commission, it could not find that the

Commission erred either in its "interpretation *and* finding of fact" (emphasis supplied) or in its application of the law to the facts; and, for that reason, believed that the evidence was legally sufficient to support the Commission's decision. This was supplemented by the later finding that "the *facts* were sufficient to uphold" the Commission's ruling.

There was apparently no claim here that the Commission exceeded its statutory authority, and the court's finding clearly embodied conclusions that (1) the Commission did not err in its construction or application of the law or in its interpretation (construction) of the facts, and (2) the evidence was legally sufficient to support the Commission's factual conclusions. The only reviewable issue stated in *Powers* not explicitly articulated by the trial court was whether the Commission justly considered all the facts concerning the injury. Aside from the incorporation of this criterion in the more general *Frank* language, we think it was implicitly considered and determined when the court found no error in either the Commission's interpretation *or finding* of fact. Certainly, there is nothing in the record to require a contrary conclusion by this Court.

It would no doubt be less confusing if, in articulating the standards employed in reviewing Commission decisions, the courts would revert to the language of *Powers* and more carefully differentiate between the standards applicable to accidental injury cases and those that govern occupational disease cases. For the reasons noted, we see no reversible error here, however.

*Judgment affirmed; appellant to pay the costs.*